IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

MARK A. CHAPPELLE,          )
      Petitioner,          )          Civil Action No. 7:21-cv-00197
                    )
v.          )
                    )          By: Elizabeth K. Dillon
WARDEN,          )          United States District Judge
      Respondent.          )

**MEMORANDUM OPINION**

Mark A. Chappelle, a federal inmate proceeding *pro se*, filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241, alleging that his continued detention is unconstitutional. Chappelle asserts two claims. First, he argues that under *Rehaif v. United States*, __ U.S. __, 139 S. Ct. 2191 (2019), his 2017 conviction under 18 U.S.C. § 922(g) is invalid. *See In re Jones*, 226 F.3d 328, 333–34 (4th Cir. 2000) (hereinafter "*Jones*") (allowing § 2241 challenge to federal conviction). Second, he contends that he is entitled to relief pursuant to the Supreme Court's decision in *Borden v. United States*, 141 S. Ct. 1817 (2021). In particular, he contends that *Borden* invalidates several of his predicate convictions, such that he should not have been sentenced under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), or as a career offender under United States Sentencing Guideline (U.S.S.G.) § 4B1.1.

The court accepted Chappelle's supporting memorandum as his amended petition, and ordered a response. (Dkt. No. 9.) Respondent has filed a response and motion to dismiss in opposition. (Dkt. No. 20.) As to Chappelle's *Rehaif* claim, respondent argues that the petition should be dismissed because the court lacks jurisdiction over it, Chappelle has procedurally defaulted his claims, and his claims fail on the merits. In response to the *Borden* claim, respondent argues that the court lacks jurisdiction to consider it.

Chappelle filed a reply (Dkt. No. 22), and also has filed three different documents docketed as "Additional Evidence" (Dkt. Nos. 24, 26, 30), two motions to supplement his petition (Dkt. Nos. 27, 31), and a motion for appointment of counsel (Dkt. No. 25).  The court will grant Chappelle's motions to supplement and consider all of the additional information and arguments he has presented, which relate to his *Borden* claim.  Most notably, they address respondent's argument that Chappelle had failed to ask for permission to file a second or successive 28 U.S.C. § 2255 motion based on *Borden*.  Chappelle's supplemental filings make clear that he has now done so, although the Eleventh Circuit denied his request.

The court will deny Chappelle's motion for counsel (Dkt. No. 25) because the interests of justice do not require such appointment at this time, *see* 18 U.S.C. § 3006A(a)(2)(B).  Further, for the reasons set forth herein, the court concludes that jurisdiction is lacking over Chappelle's entire petition, including his *Borden* claim.  Thus, the court will grant respondent's motion and dismiss the petition without prejudice for lack of jurisdiction.

## I.  BACKGROUND

In December 2015, Chappelle was charged in a three-count indictment in the Southern District of Florida, in Case No. 2:15-CR-14078-KAM.[1]  It charged him with possession with intent to distribute heroin and cocaine (Count One); carrying a firearm during and in relation to a drug trafficking crime (Count Two); and possessing a firearm and ammunition after having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) (Count Three).

Chappelle elected to go to trial.  Prior to trial, he entered into a stipulation pursuant to *Old Chief v. United States*, 519 U.S. 172, 191 (1997), which allows a defendant to admit to his felony status, which then precludes the government from offering other evidence to prove the

---

[1] The court will cite to docket entries in the underlying criminal case as "*Chappelle*, ECF No. __." Citations to docket entries in the case at bar will appear in parentheses as "Dkt. No. __."

prior conviction to the jury and spares the defendant from having the "name and nature" of his prior felony convictions disclosed to the jury. *United States v. Williams*, 461 F.3d 441, 443 (4th Cir. 2006). The stipulation provided: "On September 15, 2015, the Defendant, Mark Augustus Chappelle, was a convicted felon. In other words, prior to that date, he had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year, that is, a felony offense." *Chappelle*, ECF No. 52-2, at 104. The jury convicted him on all three counts. *Id.*, ECF No. 46.

The trial court determined that Chappelle should be sentenced as a career offender, *see* U.S.S.G. § 4B1.1., and that he was subject to the enhanced penalties of the ACCA because he had at least three prior felonies that were either serious drug offenses or violent felonies, *see* 18 U.S.C. § 924(e) (setting forth enhanced sentences for persons with three prior serious drug offenses or violent felonies). *Chappelle*, Sent. Tr. 3–10, ECF No. 74 (overruling defendant's objections to the PSR's determination that he was both an armed career criminal under the ACCA and a career offender under the guidelines). These prior offenses were also the underlying felonies that made Chappelle's possession of a firearm illegal.

The first group of underlying offenses were ones Chappelle committed in February 2008. Specifically, he pled guilty and was sentenced to 15 months and 14 days' imprisonment (which was the time he had served as of sentencing) for three separate felonies including aggravated assault with a firearm on a police officer, aggravated assault with a firearm, and shooting into an occupied vehicle. (Presentence Investigation Report ("PSR") ¶ 36, Dkt. No. 20-1.) According to his PSR, Chappelle spotted an off-duty police officer, yelled "hey that's the punk a** police," and then fired seven shots at the officer. (*Id.*) These offenses were committed in Palm Beach County, Florida. (*Id.*)

3

On March 31, 2010, Chappelle was arrested for two drug offenses, including one in which he was observed selling a customer $40 worth of crack cocaine.  (PSR ¶ 38.)  In October 2010, he pled guilty to one count of selling cocaine and one count of possession of cocaine in Palm Beach, Florida, and he was sentenced to serve concurrent sentences of 30 months and 42 months respectively, in the Florida Department of Corrections.  (PSR ¶¶ 38–39.)  Chappelle was in custody for three years after his sentencing, from October 13, 2010, to October 1, 2013.  (*Id.* ¶ 39.)

In September 2010, Chappelle and another man were arguing with two other men, and pointed a compact machine gun and an AK-47 at the other men.  (*Id.* ¶ 47.)  Chappelle was arrested the following month and ultimately pled guilty to two felony counts of aggravated assault with a deadly weapon (lesser) in Palm Beach, Florida.  On June 2, 2011, he was sentenced to 239 days of time served.  (*Id.*)

In Chappelle's federal case, the district court imposed a below-guidelines sentence of 264 months' incarceration, consisting of concurrent sentences of 204 months on Counts One and Three, and a 60-month consecutive sentence on Count Two.  *Chappelle*, ECF No. 66.  Chappelle appealed, and his conviction and sentence were affirmed on appeal by the United States Court of Appeals for the Eleventh Circuit.  *United States v. Chappelle*, No. 17-12461 (11th Cir. May 25, 2018); *Chappelle*, ECF No. 79.

Chappelle filed a number of subsequent motions in the district court, including three separate motions to reduce his sentence, a motion for compassionate release, and a letter raising a *Rehaif* claim that the district court denied by noting that Chappelle did "not have a viable *Rehaif* claim."  *Chappelle*, ECF No. 89; *see also id.*, ECF Nos. 81–86, 90, 92.   In particular, the court stated that Chappelle could only pursue such a claim on collateral review, but that the

4

Eleventh Circuit had held that *Rehaif* did not apply retroactively or on collateral review, and thus, he could not pursue his claim. *Chappelle*, ECF No. 89 (citing *In re Palacios*, 931 F.3d 1314, 1315 (11th Cir. 2019)).[2]

On July 23, 2020, the court docketed Chappelle's first motion under 28 U.S.C. § 2255. *Id.*, ECF No. 97. In it, Chappelle alleged that the indictment was defective, that the jury was improperly instructed, and that *Rehaif* compelled vacatur of his conviction and sentence. *Id.* On July 28, 2020, the district court dismissed his motion as untimely and denied a certificate of appealability. *Id.*, ECF No. 98; *Chappelle v. United States*, No. 2:20-CV-14262, ECF No. 4 (S.D. Fla. July 28, 2020) (opinion in corresponding civil case explaining that motion was untimely). The motion stated that it had been executed on June 18, 2020, which would have been within one year of the June 19, 2019 *Rehaif* decision, but it appears that it was not received in the mail room of Chappelle's prison until July 13, 2020, according to a date stamp on the document. The sentencing court interpreted the document as having been given to prison officials for mailing on July 13, 2020, more than one year after *Rehaif* was decided. *Chappelle*, ECF No. 115, at 5–6.

Chappelle did not appeal. Instead, he filed numerous letters and a motion to recharacterize his § 2255 petition, all of which were denied by the district court. *Id.*, ECF Nos. 105–110, 112–115. In one of its orders, the district court explained the procedural history of

---

[2] The holding of *Palacios* was not directly controlling as to Chappelle's § 2255 motion, however, because *Palacios* did not address whether *Rehaif* could be applied retroactively in the context of a first, timely § 2255 motion. Instead, the *Palacios* Court was considering whether it could grant authorization under § 2255(h) for a second or successive § 2255 motion based on *Rehaif*. It concluded that it could not because the decision was not a "new rule of constitutional law" and had not been made retroactive to cases on collateral review by the Supreme Court, as required to allow authorization under the plain text of § 2255(h). *Palacios* did not rule on whether *Rehaif* could provide a basis for relief in an initial, timely § 2255 petition. *Cf., e.g., In re Hires*, 825 F.3d 1297, 1303 (11th Cir. 2016) (explaining that a decision might be retroactive for a first § 2255 motion, but not for purposes of a second or successive § 2255 motion)). Indeed, the Eleventh Circuit recently held that *Rehaif* applied retroactively in the context of an initial § 2255 motion. *Seabrooks v. United States*, ___ F.4th ___, 2022 WL 1435599 (May 6, 2022).

Chappelle's § 2255 motion and other challenges in more detail, and explained again that Chappelle's § 2255 motion was not timely.[3]  *Id.*, ECF No. 115.

Thereafter, Chappelle filed this § 2241 petition, arguing that he is entitled to relief under *Rehaif*.  His amended petition, as noted, also argues that his aggravated assault convictions under Florida law no longer qualify as violent felonies after *Borden*.

In addition to raising a *Borden* claim in his § 2241 petition before this court, Chappelle also filed a new § 2255 motion in the sentencing court raising a claim based on *Borden*.  *Id.*, ECF No. 126.  At the same time, he filed a motion asking the sentencing court to refrain from ruling on his new § 2255 motion "until various issues related to *Borden* are resolved" by the Eleventh Circuit and explaining that he filed the motion only as a "placement holder." *Id.*, ECF No. 127. Based on the criminal docket, it appears that motion remains pending.

As noted *supra*, Chappelle subsequently sought authorization from the Eleventh Circuit to file a second or successive § 2255 motion raising a *Borden* claim, but the Eleventh Circuit denied his request, concluding that his motion did not meet the gatekeeping requirements for a second § 2255 motion because *Borden* was not a new rule of constitutional law, but a decision of statutory interpretation.  *In re Chappelle*, No. 21-13464-E (11th Cir. Oct. 25, 2021) (order denying application for leave to file a second or successive § 2255 motion).

## B.  Chappelle's *Rehaif* Claim

In his *Rehaif* claim, Chappelle challenges his conviction under 18 U.S.C. § 922(g). Section 922(g) makes it unlawful for certain individuals to possess firearms.  "The provision lists nine categories of individuals subject to the prohibition, including felons . . . .  A separate

---

[3]   In the same order, the trial court also stated that even if the motion had been brought within one year of the *Rehaif* decision, Chappelle was not entitled to relief because *Palacios* barred a collateral challenge based on *Rehaif*.  *Chappelle*, ECF No. 115.  As noted *supra* note 2, that is not correct.

provision, § 924(a)(2), adds that anyone who '*knowingly*' violates the first provision shall be fined or imprisoned for up to 10 years."  *Rehaif*, 139 S. Ct. at 2194; *see also* 18 U.S.C. § 922(g). In *Rehaif*, the Supreme Court held that "the word 'knowingly' applies both to the defendant's conduct and to the defendant's status.  To convict a defendant, the Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it."  139 S. Ct. at 2194.

Chappelle asserts that *Rehaif* requires that his "conviction for § 922(g)(1) . . . be vacated . . . [because he] did not know [he] was a felon."  (Pet. 4, ECF No. 1.)  In particular, he claims that the indictment was invalid because it failed to allege that he knew he was a felon, that the jury was improperly instructed, and that he is "actually innocent" of a violation of § 922(g).  (Am. Pet. at 5–7, Dkt. No. 10.)  He thus requests that his conviction be dismissed and that he be released from prison.  (*Id.* at 9.)

## C.  Chappelle's *Borden* Claim

Chappelle's second claim relies on *Borden*, which held that the ACCA's definition of "violent felony" in its elements clause, 18 U.S.C. § 924(e)(2)(B)(i), did not include offenses committed recklessly if the offense is "against the person of another."  *See Borden*, 141 S. Ct. at 1825 (plurality op.); *id.* at 1834 (Thomas, J., concurring in the judgment).  Prior to *Borden*, the Eleventh Circuit had held that aggravated assault under Florida law satisfied the elements clause of the ACCA.  *Turner v. Warden Coleman FCI (Medium)*, 709 F.3d 1328 (11th Cir. 2013).  And at least one Eleventh Circuit judge has opined that Florida law allows a conviction "under the aggravated assault statute by offering proof of less than intentional conduct, including recklessness."  *United States v. Golden*, 854 F.3d 1256, 1258 (11th Cir. 2017) (Pryor, J., concurring) (citing *Kelly v. State*, 552 So. 2d 206, 208 (Fla. Dist. Ct. App. 1989) ("Where . . .

7

there is no proof of intentional assault on the victim, that proof may be supplied by proof of conduct equivalent to culpable negligence . . . or by proof of willful and reckless disregard for the safety of others.")). After *Borden*, then, it appears that *Turner* may not be good law. The Eleventh Circuit, however, has sought clarification from the Florida Supreme Court regarding the precise scope of Florida's aggravated assault offense. *See Somers v. United States*, 15 F.4th 1049 (11th Cir. 2021) (certifying questions to the Florida Supreme Court to assist in determining *Borden*'s effect on the continuing validity of *Turner*).

## II.  DISCUSSION

### A.  The Court Lacks Jurisdiction Over Chappelle's § 2241 *Rehaif* Claim.

Typically, a petitioner challenging the validity of his conviction or sentence must proceed under 28 U.S.C. § 2255 in the district where he was convicted. However, the "savings clause" in § 2255 allows a prisoner to challenge the validity of his conviction and/or his sentence by filing a § 2241 petition for writ of habeas corpus, if he demonstrates that § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e).[4] "[T]he remedy afforded by § 2255 is not rendered inadequate or ineffective merely because an individual has been unable to obtain relief under that provision, or because an individual is procedurally barred from filing a § 2255 motion." *In re Vial*, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) (internal citations omitted).

In *Jones*, the Fourth Circuit explained that § 2255 is "inadequate or ineffective" to test the legality of a conviction when:

> (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

---

[4]  This provision "is commonly referred to as the 'savings clause' as it arguably saves § 2255 from unconstitutionally suspending habeas corpus." *Lester v. Flournoy*, 909 F.3d 708, 711 (4th Cir. 2018).

328 F.3d at 333–34.

The requirements of the savings clause are jurisdictional.  *United States v. Wheeler*, 886 F.3d 415, 423 (4th Cir. 2018).  Thus, a § 2241 petitioner relying on the savings clause to challenge his conviction must satisfy each prong of the *Jones* test for the district court to have jurisdiction to evaluate the merits of the petitioner's claims.  *Id.* at 426–29.  Although the court must apply the procedural standard in *Jones*, "[i]n evaluating the substantive law in a § 2255(e) savings clause analysis, the court must 'look to the substantive law of the circuit where a defendant was convicted.'"  *Hahn v. Moseley*, 931 F.3d 295, 300–01 (4th Cir. 2019).  In this case, Chappelle was convicted in the Southern District of Florida, which is within the Eleventh Circuit.  Thus, Eleventh Circuit substantive law governs Chappelle's petition, but the court looks to Fourth Circuit law concerning the availability of § 2241.  *See id.*

Respondent's opposition and request for dismissal first notes that respondent disagrees with the Fourth Circuit's "substantive framework" as to what claims can be brought in a § 2241 petition and believes that "*Jones* and its progeny are wrongly decided," preserving that issue for appeal.  (Opp'n 9–10, Dkt. No. 20.)  Respondent next moves to dismiss the petition based on the court's lack of jurisdiction.

As to the *Rehaif* claim, respondent acknowledges that Chappelle's claim satisfies the first and third *Jones* requirements, (*id.* at 11 n.5), but he argues that Chappelle's § 2241 petition fails to meet the second.  (*Id.* at 10–19.)  Respondent also contends that, even if the court had jurisdiction, Chappelle has procedurally defaulted his claims and failed to show cause and prejudice or "actual innocence" so as to overcome that default.  (*Id.* at 19–25.)  Lastly, respondent maintains that Chappelle's *Rehaif* claim fails on its merits.  (*Id.* at 26–28.)

In ruling on other § 2241 petitions raising *Rehaif* claims, this court previously has

9

addressed nearly identical arguments raised by the respondent, including its analysis of the Fourth Circuit's decision in *Hahn v. Moseley*, 931 F.3d 295 (4th Cir. 2019), and its potential impact on the second requirement of *Jones*.  *See, e.g.*, *Gatewood v. Streeval*, No. 7:21-CV-00003, 2022 WL 822175 (W.D. Va. Mar. 18, 2022).

But here, it is not necessary to go into such detail.  In this case, Chappelle filed his first § 2255 motion *after Rehaif* was decided, as he admits.  (Am. Pet. 4, Dkt. No. 10.)  He therefore cannot satisfy the second *Jones* requirement.  Chappelle suggests that this fact does not matter here because he "did not have an opportunity to fully raise his *Rehaif* issue."  (*Id.*)  He points out that the district court relied on *in Re Palacios*, 931 F.3d 1314 (11th Cir. 2019), to deny his motion without even ordering a government response.  (*Id.* at 4–5.)  That is not entirely accurate. As to the first motion that Chappelle actually titled a § 2255 motion, the court denied it because it was untimely.

In any event, Chappelle submits that the second prong of *Jones* requires not only that he have filed a § 2255 after the first decision but that "the § 2255 was heard on the merits and fully exhausted."  (*Id.* at 5.)  He cites to no legal authority for this proposition, however, and the court can find none.  To the contrary, the Fourth Circuit has held, in addressing the availability of relief under § 2255, that § 2255 is not unavailable simply because the petitioner has been unable to obtain relief or be successful in pursuing § 2255 relief.  *Rice v. Rivera*, 617 F.3d 802, 807 (4th Cir. 2010) ("Importantly, 'the remedy afforded by § 2255 is not rendered inadequate or ineffective merely because . . . an individual is procedurally barred from filing a § 2255 motion.'" (quoting *In re Vial*, 115 F.3d at 1194 n.5)).  Instead, it is clear that the court lacks jurisdiction over his *Rehaif* claim, and it must be dismissed without prejudice.  *See Wheeler,* 886 F.3d at 423.

The court further notes that Chappelle's *Rehaif* claim also cannot satisfy the second *Jones* prong because he cannot show that "the conduct of which" he was convicted is no longer criminal after *Rehaif.  See Jones*, 328 F.3d at 333.  In particular, Chappelle summarily states that he did not know he was a felon, but he provides no evidence to support this statement.  Further, there is ample proof in the record to support the knowledge-of-status element of *Rehaif.*[5]

On this issue, and although it involved direct appeals rather than collateral attacks, the Supreme Court's decision in *Greer* is instructive.  *Greer* was a consolidated appeal from a Fourth Circuit case, *United States v. Gary*, 954 F.3d 194 (4th Cir. 2020), and an Eleventh Circuit case, *United States v. Greer*, 798 F. App'x 483 (11th Cir. 2020).  In the Eleventh Circuit case, the defendant had gone to trial.  Like Chappelle did here, Greer had stipulated that he was a felon, and he did not request or receive a jury instruction requiring that the jury find that he knew he was a felon when he possessed a firearm.  Contrary to Chappelle's argument here, the Court concluded that the error was not a "structural" one.  Instead, it was subject to plain error review, and, to succeed on direct appeal, Greer had to show that, if the district court had correctly instructed the jury on the *mens rea* element, there is a "reasonable probability" that he would have been acquitted.  *Id.* at 2097.

In making that determination, the Court noted that a defendant like Chappelle faces "an uphill climb," reasoning that "[i]f a person is a felon, he ordinarily knows he is a felon."  *Id.*; *see also id.* ("Felony status is simply not the kind of thing that one forgets.") (citing *Gary*, 963 F.3d at 423 (Wilkinson, J., concurring in denial of reh'g en banc)).  The defendants in *Greer* could not meet their burden, and the court's explanation is apt here:

---

[5] Chappelle contends that the government should not be permitted to use any information other than what was presented at trial to show that he knew he was a felon.  This argument is foreclosed by *Greer v. United States*, 141 S. Ct. 2090, 2099 (2021).  Regardless, and as discussed herein, the jury heard an audio recording of Chappelle, on the day he was arrested, saying that "of course" he knew he was a felon.

> Before their respective felon-in-possession offenses, both Greer
> and Gary had been convicted of multiple felonies. Those prior
> convictions are substantial evidence that they knew they were
> felons. Neither defendant has ever disputed the fact of their prior
> convictions. At trial, Greer stipulated to the fact that he was a
> felon. . . . Importantly, on appeal, [Greer has not] argued or made a
> representation that [he] would have presented evidence at trial that
> [he] did not in fact know [he was a felon] when [he] possessed
> firearms. Therefore, Greer cannot show that, but for the *Rehaif*
> error in the jury instructions, there is a reasonable probability that a
> jury would have acquitted him.

*Id.* at 2097–98.

Like Greer, Chappelle stipulated to being a felon, pursuant to *Old Chief*, 519 U.S. at 191.

And Chappelle does not dispute that he is, in fact, a felon.  Nor has he presented any evidence to

show that he did not know he was a felon.  *Cf. Greer*, 141 S. Ct. at 2097 (explaining that

demonstrating prejudice under *Rehaif* "will be difficult for most convicted felons for one simple

reason: Convicted felons typically know they're convicted felons."  *Id.* at 2098 (citation

omitted).  Significantly, moreover, Chappelle admitted that he knew he was a felon in a recorded

statement on the date of his arrest.  The United States played that audio recording during trial and

provided transcripts to the jury as exhibits.  *Chappelle*, Trial Tr., at 59–60, ECF No. 72.  In that

recording, Chappelle first admitted that he possessed the loaded gun, saying "The gun was

loaded – the gun was loaded in the car with me while in my possession."  *Chappelle,* Tr. of

Audio Recording, ECF No. 52-2, at 88.  A special agent also asked:  "Okay.  And you know that

you have – that you're a convicted felon?"  Mr. Chappelle responded, "Of course I know that."

*Id.* at 83.

Also, unlike some defendants who are convicted of a felony but are not sentenced to

more than a year, Chappelle received sentences of more than one year on several of his prior

felonies.  *Cf. United States v. Caldwell*, 7 F.4th 191, 213 (4th Cir. 2021) (noting that there could

be a case where a felon did not know he was a felon where, for example, he was previously convicted of a crime punishable by imprisonment for a term exceeding one year, but was sentenced to a term less than a year or to probation).  Moreover, Chappelle actually served nearly three years as to one of his convictions.  All of this is strong evidence that Chappelle knew that he was a felon when he committed the offense.

Based on the foregoing, the court concludes that Chappelle cannot demonstrate that the conduct for which he was convicted is no longer a crime.  *See Jones*, 328 F.3d at 334.[6] Numerous district court within the Fourth Circuit have reached the same conclusion when faced with similar § 2241 petitions.  *See Gatewood*, 2022 WL 822175, at *5 & n.5 (collecting authority).

Because Chappelle fails to satisfy one of the *Jones* requirements, the court lacks jurisdiction over his *Rehaif* claim, and the claim must be dismissed without prejudice.

## B.  The Court Lacks Jurisdiction Over Chappelle's *Borden* Claim.

Chappelle's claim pursuant to *Borden* is a challenge to his sentence.  As such, the court's jurisdictional inquiry is governed by the four-part test in *Wheeler*, not *Jones*.  Under *Wheeler*, a petitioner may proceed under § 2241 to challenge his sentence only if he shows all of the

---

[6] For like reasons, even if the court were to reach the merits of Chappelle's *Rehaif* claim, it would fail. "For reasons of finality, comity, and federalism, habeas petitioners 'are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.''"  *Davis v. Ayala*, 576 U.S. 257, 267 (2015) (quoting *Brecht v. Abrahamson*, 507  U.S. 619, 637 (1993)).  The Fourth and Eleventh Circuits both have held that a habeas petitioner bears the burden to show that any error was not "harmless," but had a "substantial and injurious effect" on his conviction.  *United States v. Smith,* 723 F.3d 510, 517 (4th Cir. 2013); *Holland v. Florida*, 775 F.3d 1294, 1314 (11th Cir. 2014). Chappelle cannot meet this burden.

As the court's analysis in this opinion makes plain, *see generally infra*, Chappelle does not offer any evidence to support his claim that he did not know he was a felon at the time of the offense, and the record contains evidence—including his own recorded statement—from which a jury easily could have found that he knew he was a felon.  Accordingly, he has not shown a reasonable likelihood of a different result, let alone a "substantial and injurious" effect on his conviction.  Even if the court had jurisdiction, then, Chappelle would not be entitled to relief. *Cf. Neder v. United States*, 527 U.S. 1, 17 (1999) (denying habeas relief where intervening law meant that a jury charge omitted a required element of the offense, where "the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error").

following:

> (1) at the time of sentencing, settled law of this circuit or the
> Supreme Court established the legality of the sentence; (2)
> subsequent to the prisoner's direct appeal and first § 2255 motion,
> the aforementioned settled substantive law changed and was
> deemed to apply retroactively on collateral review; (3) the prisoner
> is unable to meet the gatekeeping provisions of § 2255(h)(2) for
> second or successive motions; and (4) due to this retroactive
> change, the sentence now presents an error sufficiently grave to be
> deemed a fundamental defect.

*Wheeler*, 886 F.3d at 429; *see also Lester*, 909 F.3d at 712.  Respondent argues that Chappelle's

*Borden* claim fails to satisfy the second or third requirements.  The court will discuss first the

first and fourth requirements, and then turn to the third and second.

### 1.  First and Fourth *Wheeler* Prongs

As respondent concedes, Chappelle's claim satisfies the first *Wheeler* prong.  There is no

doubt that, when Chappelle was sentenced, settled Eleventh Circuit law established the legality

of his sentence.  At that time, *Turner v. Warden Coleman FCI*, 709 F.3d 1328, 1337–38 (11th

Cir. 2013), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015), which

squarely held that a Florida conviction for aggravated assault was a crime of violence under the

ACCA, was Eleventh Circuit law.  Indeed, Chappelle's sentence was affirmed on appeal in

reliance on *Turner*.  *See United States v. Chappelle*, No. 17-12461 (11th Cir. May 25, 2018);

*Chappelle*, ECF No. 79, at 11–12.

Moreover, it is plain that the ACCA significantly increased Chappelle's statutory

mandatory minimum sentence.  Thus, if Chappelle could satisfy the other *Wheeler* requirements,

and if he could show that *Borden* means he no longer qualifies to be sentenced under the ACCA,

this would constitute a "fundamental defect" in his sentence, so as to satisfy the fourth

requirement.  *See Wright v. United States*, No. 20-7838, 2022 WL1486820, at *1 (4th Cir. May

11, 2022) (explaining, in context of addressing fourth prong of *Wheeler*, that "an erroneous increase in the mandatory minimum constitutes grave error regardless of whether the defendant's sentence ultimately falls within the Guidelines range").

### 2. Third *Wheeler* Prong

Although respondent contends that Chappelle also cannot establish the third *Wheeler* requirement, the court disagrees. Chappelle can establish the third requirement—that he is unable to meet the gatekeeping requirements of § 2255(h). In particular, because *Borden* is a statutory decision, rather than a constitutional one, it cannot be brought in a second § 2255 motion. Thus, the third *Wheeler* prong is also satisfied.[7]

### 3. Second *Wheeler* Prong

#### a. The Court Assumes, Without Deciding, That Settled Eleventh Circuit Law Has Changed

Turning to the first part of the second prong (showing that the settled law has changed), respondent notes that it "ultimately" may "be that *Borden* affects the status of Florida aggravated assault as a felony." (Opp'n at 29 (citing *United States v. Stewart*, 711 F. App'x 810, 811–12).) But respondent argues that the specific Florida crimes were not at issue in *Borden* and it "has found no court opinion applying *Borden*" to those crimes.[8]

Even if there is not a case addressing the precise underlying conviction after *Borden*, it is still possible that settled Eleventh Circuit law has changed. As discussed *supra*, the Eleventh

---

[7]   Moreover, although at the time respondent filed his opposition, Chappelle had not yet sought such authorization to file a second or successive § 2255, he now has. And the Eleventh Circuit has denied his request. *In re Chappelle*, No. 21-13464-E (11th Cir. Oct. 25, 2021).

[8]   Based on the court's research, it appears that the Eleventh Circuit, in response to *Borden*, has certified related question to the Florida Supreme Court to determine the exact nature of Florida's aggravated assault offense. *See Somers v. United States*, 15 F.4th 1049 (11th Cir. 2021). In doing so, it noted that it was trying to determine *Borden*'s effect on the validity of *Turner*, but needed additional information about the offense to do so. *See generally id.* No opinion has yet been issued by the Florida Supreme Court.

Circuit had previously held in *Turner* that aggravated assault with a firearm is a proper ACCA predicate under the elements clause.  But pursuant to *Borden*, and assuming the Florida aggravated assault offense can be committed with a *mens rea* of recklessness, then it would no longer qualify as a proper ACCA predicate after *Borden*.  As explained in *Somers v. United States*, 15 F.4th 1049 (11th Cir. 2021), though, the Eleventh Circuit apparently believes that the Florida offense's *mens rea* is not clearly defined, as evidenced by the *Somers* court's certifying questions about the offense to the Florida Supreme Court, so that it may determine whether *Turner* survives *Borden*.

At least for purposes of this opinion, though, the court will assume—without deciding— that settled Eleventh Circuit law has changed, such that Chappelle would no longer have the sufficient number of ACCA predicate convictions.

**b.  *Borden* has not been deemed retroactive.**

Even so, Chappelle still cannot satisfy the second *Wheeler* requirement because *Borden* has not been "deemed to apply retroactively on collateral review."  Respondent's opposition, filed approximately three months after *Borden* was decided, stated that respondent had not located any cases "to date that has addressed [*Borden*'s] retroactivity—much less deemed it to be retroactive."  (Opp'n 29.)  Since that time, however, several courts have concluded that *Borden* is retroactive, including the Tenth Circuit, which so held with the government's concession. *United States v. Toki*, 23 F.4th 1277, 1281 (10th Cir. 2022); *see also, e.g.*, *Zepeda v. United States*, No. 2:08-cr-01329-PHX-ROS1, 2022 WL 101197, at *11 (D. Ariz. Jan. 11, 2022) ("*Borden* applies retroactively to Zepeda's collateral review motion."), *appeal docketed*, No. 22-15367 (9th Cir. Mar. 10, 2022).  The Fourth Circuit has not squarely addressed the issue, but cited approvingly to another portion of *Toki*, which held that *Borden*'s reasoning should apply to

the definition of a crime of violence under § 924(c), as well. *United States v. Jackson*, 32 F.4th 278, 2022 WL 1160391, at *2 n.4 (4th Cir. 2022). And *Jackson* involved an appeal from the denial of a successive § 2255 motion. *See id.* at *2–*3. Critically, though, neither the Eleventh Circuit nor the Supreme Court has yet deemed *Borden* to apply retroactively.

The lack of authority from the Eleventh Circuit or the Supreme Court raises a threshold question—one that neither party addresses—and the answer to which is not clear. Specifically, may this court make the determination, in the context of deciding the second *Wheeler* prong, that a particular decision is retroactive, or must the retroactivity determination be made by the relevant circuit court of appeals or the Supreme Court?

The answer is clearer in other, related contexts. For example, in the context of § 2255(h), which allows courts of appeals to authorize second or successive § 2255 motions in certain circumstances, the text of the statute itself provides that the Supreme Court must make the retroactivity determination. 28 U.S.C. § 2255(h).

By contrast, in the context of determining the retroactivity of a decision for purposes of determining whether a first § 2255 motion is timely under § 2255(f)(3), it appears settled that the district court faced with the § 2255 motion may make that determination in the first instance. *United States v. Thomas*, 627 F.3d 534, 536–37 (4th Cir. 2010) (collecting authority and holding that the retroactivity question in § 2255(f)(3) may be answered affirmatively by any federal court, including district courts, not just the Supreme Court); *Dodd v. United States,* 365 F.3d 1273, 1278 (11th Cir. 2004) (noting that "every circuit to consider this issue has held that a court other than the Supreme Court can make the retroactivity decision for purposes of § 2255[(f)](3)"), *aff'd* 545 U.S. 353 (2005).

In the context of a § 2241 petition and *Wheeler*'s second prong, the answer is less clear.

Several courts within the Fourth Circuit have stated (or implied) that the retroactivity decision must be made by an appellate court or the Supreme Court, but have not provided any rationale or explanation for that conclusion. *E.g.*, *Herrera v. Barnes*, No. CV 9:20-3779-RMG-MHC, 2020 WL 8455087, at *3 (D.S.C. Dec. 2, 2020), *report and recommendation adopted,* No. CV 9:20-03779-RMG, 2020 WL 7640475 (D.S.C. Dec. 23, 2020) (explaining that to meet the second prong under *Wheeler*, a § 2241 petitioner must show that the circuit court of appeals where he was convicted has deemed the relevant decision retroactive and also noting that district courts within that circuit had held the decision was not retroactive); *Garcia-Rodriguez v. Breckon*, No. 7:18CV418, 2020 WL 1929139, at *4 (W.D. Va. Apr. 21, 2020) (finding that the second *Wheeler* prong was not satisfied because the case on which the petitioner relied had not been held to apply retroactively to cases on collateral review by either the Supreme Court or the Tenth Circuit, where he was convicted).

In one decision squarely addressing the question, a district court noted that the passive voice in the *Wheeler* test—"is deemed retroactive"—naturally means that a court other than the § 2241 court must do the "deeming." [9] *Knight v. Warden, FCI Beckley*, No. 5:20-CV-00329, 2021 WL 3361698, at *9 (S.D.W. Va. Apr. 29, 2021), *report and recommendation adopted,* No. 5:20-CV-00329, 2021 WL 3355508 (S.D.W. Va. Aug. 2, 2021) (explaining why it is clear "that [a district court deciding a § 2241 petition] cannot unilaterally determine whether a given appellate decision is retroactive," for purposes of the second *Wheeler* prong); *see also Hunt v. Rickard*, No. CV 1:18-01371, 2021 WL 932035, at *4, *8 (S.D.W. Va. Mar. 11, 2021) (finding petitioner had failed to satisfy the second prong of *Wheeler* where he pointed to no Eleventh

---

[9] Of course, the passive voice in the *Wheeler* test is not from a statutory source, unlike the other two provisions discussed in the text--§ 2255(h) and § 2255(f)(3). It is a test crafted by the Fourth Circuit.

Circuit or Supreme Court case saying the case he relied upon was retroactive, noting that *Wheeler* requires that the change "was deemed" to apply retroactively, and concluding that "to the extent petitioner is asking this court to deem authorities retroactive, it cannot").   But the court does not find that alone dispositive, because passive voice is also used in § 2255(f)(3). That provision deems a § 2255 motion timely if filed within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  28 U.S.C. § 2255.  And as already noted, district courts can "make" a case retroactively applicable under § 2255(f)(3).  *See Thomas*, 627 F.3d at 536–37.

Another district court, *Sellers v. Antonelli*, No. 5:18-cv-02735-JMC, 2022 WL 105445, at *3 (D.S.C. Jan. 11, 2022), also concluded that *Wheeler*'s retroactivity determination could not be made by the district court ruling on a § 2241 petition.  The *Sellers* court relied on the fact that, unlike a first § 2255 motion, both § 2255(h) and § 2241 are intended to be used only in limited circumstances, and so it makes sense that retroactivity must be determined by an appellate court.

Although these considerations—the passive voice and the fact that the scope of § 2241 is more limited than under § 2255—have some bearing on the question, the court does not find them dispositive.  Instead, the court believes the best indicator of how the Fourth Circuit would answer this question is the reasoning of its decision in *Braswell v. Smith*, 952 F.3d 441 (4th Cir. 2020).  There, the court addressed the portion of the *Wheeler* test that requires that the retroactive change in law have occurred "subsequent to the prisoner's direct appeal and first § 2255 motion."  952 F.3d at 444.  The court held that so long as the court decision making the change in law retroactive occurred subsequent to the direct appeal and first § 2255 motion, that portion of the *Wheeler* test was satisfied.  Thus, even if—as was the case in *Braswell*—the decision

19

changing the law was decided before the petitioner's first § 2255 motion, the petitioner still could satisfy *Wheeler*'s second prong because the decision deeming the change in law retroactive occurred after his first § 2255 motion. *Id.* at 444. The reasoning of *Braswell* would make no sense if a district court could simply determine the retroactivity decision in the first instance. Accordingly, *Braswell* is strong evidence that only the relevant circuit court or the Supreme Court can "deem" a decision retroactive for purposes of *Wheeler*'s second prong. *Accord Knight*, 2021 WL 3361698, at *9 (pointing to *Braswell* as supporting the conclusion that the retroactivity determination for *Wheeler* must be made by an appellate court).

Accordingly, based on *Braswell*, the passive voice in the *Wheeler* test, and the limited relief available in § 2241, the court concludes that the relevant change in law must be made retroactive by the relevant circuit court of appeals or the Supreme Court in order for the retroactivity portion of *Wheeler*'s second prong to be satisfied. *Accord Knight v. Warden, FCI Beckley*, No. 5:20-CV-00329, 2021 WL 3361698, at *9 (S.D.W. Va. Apr. 29, 2021), *report and recommendation adopted,* No. 5:20-CV-00329, 2021 WL 3355508 (S.D.W. Va. Aug. 2, 2021) (explaining why it is clear "that [a district court deciding a § 2241 petition] cannot unilaterally determine whether a given appellate decision is retroactive," for purposes of the second *Wheeler* prong). *But cf. Lester v. Flournoy*, 909 F.3d 708, 712 (4th Cir. 2018) (seeming to rely on the government's concession that a particular case was retroactive to satisfy the retroactivity portion of the second prong, even in the absence of a separate decision to that effect).

Here, Chappelle has not pointed to any Eleventh Circuit of Supreme Court case stating that *Borden* applies retroactively, and the court has not found any. Thus, he cannot satisfy *Wheeler's* second prong because any change to the substantive law of the Eleventh Circuit has not been "deemed to apply retroactively on collateral review."

For this reason, the court lacks jurisdiction over Chappelle's *Borden* claim.

### III.  CONCLUSION

For the reasons stated, the court concludes that it lacks jurisdiction over Chappelle's petition.  Accordingly, the court will dismiss the case without prejudice.

Entered: May 24, 2022.

/s/ Elizabeth K. Dillon

Elizabeth K. Dillon
United States District Judge